**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELINDA HOSLER,** | : | **Civil No. 1:13-CV-1153** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAY FULKROAD AND SONS and** | : | |
| **GERALD E. FULKROAD, SR.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

This is an action brought by Melinda Hosler against her former employer, Jay

Fulkroad and Sons and its President, Gerald E. Fulkroad, for interfering with her

rights under the Family and Medical Leave Act and terminating her employment, and

her insurance benefits, while she was out of work after undergoing a laparoscopic

hysterectomy in January 2013.  The case was tried before a jury on March 16 and 17,

2015, and the jury returned a verdict finding in favor of the plaintiff on her claim that

her employer interfered with her rights under the FMLA.  The jury awarded the

plaintiff $33,260.00 in back pay damages for this interference violation.  The jury

found in favor of the defendants on the plaintiff's claim that they retaliated against

her for exercising her rights under the FMLA.

The parties subsequently filed multiple post-trial motions seeking additional relief, all of which are now before the Court.  In these pleadings, both parties have renewed their trial motions for judgment as a matter of law, with Ms. Hosler seeking to have the Court set aside the jury's determination that she had proven one, but not both, of her FMLA claims, and to declare as a matter of law that the defendants retaliated against her.  The defendants, meanwhile, request that the Court set aside the jury's verdict in favor of Ms. Hosler, and to conclude as a matter of law that they did not violate the FMLA either by interfering with Ms. Hosler's rights under the Act, or by retaliating against her for exercising those rights by firing her while she was on leave convalescing after her surgery.

The plaintiffs have also filed a post-trial motion seeking an award of equitable relief based on the defendants' asserted violations of the FMLA and its regulations, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.,  and the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), which the plaintiff contends occurred when her employer terminated her employment, and her health insurance, unilaterally and  unlawfully, while on FMLA leave, and failed to timely provide her with required notice of her right to purchase health insurance offered through Jay Fulkroad and Sons' plan at her own expense after she had been terminated.  The plaintiff argues that the Court should impose a per

2

diem monetary sanction for this conduct, and also order the defendant to pay the cost of her medical bills that she incurred for her surgery – costs that would have been covered by Ms. Hosler's insurance had the defendants not taken steps to terminate her insurance coverage without her advance knowledge while she was undergoing surgery. For their part, the defendants, still insisting that there was no violation in the first place, argue that no such equitable relief should be awarded.

The plaintiff has also moved for an award of statutory liquidated damages, which is effectively a doubling of the jury's award, and which are ordinarily to be awarded to a prevailing plaintiff in cases brought under the FMLA, except where the Court finds that the employer had a good-faith belief that an employee was mis-using her FMLA leave. The defendants insist that Gerald Fulkroad had an honest, good-faith belief that Ms. Hosler was abusing her leave from her employment, apparently because in Mr. Fulkroad's own personal opinion the physician letter that Ms. Hosler provided from her surgeon advising Mr. Fulkroad that Ms. Hosler would require an additional period of convalescence was fraudulent, or because the plaintiff failed to sufficiently communicate with Mr. Fulkroad at any point following her surgery. The plaintiff maintains that Mr. Fulkroad's subjective reasons for discounting the veracity of the letter, and the fact that he made no effort even to call the doctor to inquire, or to seek additional information to confirm the letter's provenance, make it clear that

his own subjective opinion about the letter and about her alleged abuse of her leave rights was not a reasonable good-faith belief that would justify reducing the statutory damages called for under the FMLA.

Finally, the plaintiff has filed a motion seeking an award of front pay of nearly $150,000.00 as an equitable remedy. Ms. Hosler argues that the Court should exercise its discretion and award her five years of salary, based upon the wages that she earned with the defendants in 2012, and offset by the amount of money that she made with her new employer in 2014, and then discounted to a present value dollar figure. Ms. Hosler makes this demand for front pay on a sparse factual record, inspiring the defendants argue that front pay for five years is not justified on the evidence, is speculative, and is simply unfair. The defendants argue that they extended an offer to Ms. Hosler to return to her past job, and that Ms. Hosler has rejected that offer – something that the defendants suggest should undermine her belated claim for front pay as an additional award. Alternatively, the defendants urge the Court to award Ms. Hosler no more than one year of front pay, discounted by the amount of money she earned in her new job.

We will address the motions seriatim.

## II.   <u>DISCUSSION</u>

### A.   <u>Judgment as a Matter of Law</u>

At the close of their opponent's case-in-chief, the parties each moved the Court for entry of judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.  The Court denied these motions without prejudice to the parties renewing them after the jury returned its verdict, and the parties have now done so. As noted, the plaintiff argues that the evidence in support of her interference and retaliation claims was overwhelming, and so much so that the jury should not have been permitted to reach a Solomonic verdict when the same facts equally supported both of her FMLA claims for interference and retaliation.  The plaintiff submits that the same evidence compelled judgment in her favor on each claim.

For their part, the defendants argue that the evidence presented at trial would not have permitted the jury to conclude that they interfered with Ms. Hosler's exercise of her FMLA protected rights and that the evidence compelled the jury to find that Gerald Fulkroad had a good-faith belief that Ms. Hosler was misusing her FMLA leave, and that his subjective view about that matter should entirely preclude Ms. Hosler from prevailing.

Rule 50(a) of the Federal Rules of Civil Procedure provides that:

**(a) Judgment as a Matter of Law.**

**(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> **(A)** resolve the issue against the party; and

> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

**(2) *Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

The rule "provides one of many procedural safeguards insuring litigants and the system against an improper outcome in a civil case." Princeton Biochemicals, Inc. v. Beckman, No. Civ. A. 96-5541, 2004 WL 1398227, at *7 (D.N.J. June 17, 2004).

In order to prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'" Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893 (Fed. Cir.

1984)).  In assessing the sufficiency of the evidence, the court is to give the "verdict winner [] the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him."  Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991).  Thus, the court is not to "weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).  A judgment as a matter of law "should be granted sparingly," but a mere scintilla of evidence will not be sufficient to sustain a jury's finding of liability. Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993).  Accordingly, "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."  Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978).

Guided by the law in this field, we turn to the parties respective motions, starting with the defendants'.  The defendants' arguments are narrow, and they are unpersuasive, especially in light of the evidence presented at trial – evidence the jury plainly found in the plaintiff's favor.  Regardless of the evidence actually presented, the defendants hold fast to the view that when Ms. Hosler requested time away from

work so that she could have surgery and post-surgical recovery, she was requesting a layoff, and she was accordingly technically laid off from her employment, and, therefore, actually no longer eligible for FMLA leave.  The defendant argues that if the plaintiff had simply had her surgery in December 2012, when it was originally scheduled, she would have qualified for leave; however, since the surgery was rescheduled until just after the New Year, the defendants had placed the plaintiff into a layoff and, because they did so, she was no longer an active employee entitled to any benefits.  This is also the reason the defendants have justified stripping the plaintiff of her health insurance coverage – something that she did not learn about until after her surgery had been performed.

There is indeed an irony to the defendants' position here.  The defendants, having insisted throughout the trial that they did not even have an FMLA policy, and essentially remained entirely ignorant about this federal law, now endeavor to invoke one of its regulations as a defense.  The defendants do this despite it appearing undisputed that it was the defendants who kept the plaintiff, and her colleagues, entirely in the dark about their rights under the FMLA.  The mere failure to post notices regarding the law's availability to employees may, in some cases, constitute interference under the FMLA – precisely what the jury found occurred in this case. Gerald Fulkroad testified that the company never made use of any FMLA forms.

8

(Notes of Testimony "N.T.") at 49:22-51:6.)  Likewise, in the company handbook, the FMLA is not even mentioned.  (N.T. at 51:9-11.)  Interestingly, however, Fulkroad admitted at trial that the time the plaintiff requested off from work for surgery would have been covered under the FMLA.  (N.T. at 53:10-15.)

The defendants argue that it is the plaintiff who requested a layoff, and they simply gave her what she asked for.  This interpretation of the facts is strained, it ignores other evidence in the record, and it is frankly unreasonable.  The plaintiff testified that the standard practice of employees who needed time off from their employment with the defendants was to request what they referred to as a "layoff," but which essentially was leave from work, with the job remaining for the employee, and with benefits intact.  But what makes the defendants' argument particularly specious, is that the defendants communicated with the plaintiff in ways that plainly indicated that they continued to consider her an employee of the company while she was out.  Thus, in Gerald Fulkroad's letter of February 23, 2013, he threatened that "we will consider that you have resigned from this company effective February 4, 2013."  (N.T. at 42, Ex. P-17.)  It is impossible to reconcile this language used at the time – which indicates that the plaintiff's employment was in effect at least until February 4, 2013 – with the defendants' present assertion that the plaintiff simply went into a requested layoff at the end of 2012.  At best, there was a factual dispute

over whether the plaintiff remained employed, or was on a "layoff," and the jury evidently believed that the plaintiff's absence from work was covered by the FMLA. There is no basis for the Court to upset the jury's reasoned consideration and resolution of this issue of fact.  Since this is the only basis for the defendants' argument that they are entitled to judgment as a matter of law, and because we find the argument is untenable on the record at trial, and the defendants' motion must be denied.

The plaintiff, by contrast, argues that the jury had no basis to find that the defendants did not retaliate against her for exercising her rights under the FMLA, particularly as those same facts supported the jury's finding that the defendants interfered with Ms. Hosler's exercise of her rights.  Although the Court appreciates the plaintiff's argument in support of her retaliation claim, we are unable to find that the jury's verdict must be set aside, since there was some evidence that conceivably could have caused the jury to find that the plaintiff had not, in fact, been retaliated against *because* she engaged in protected FMLA activity.  Because we find that the record could support the jury's determination in this regard, the plaintiff's motion must also be denied.

To prevail on a retaliation claim under the FMLA, the plaintiff must provide that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse

employment decision, and (3) the adverse action was causally related to her invocation of rights. <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 302 (3d Cir. 2012).   An FMLA retaliation claim requires proof of the employer's retaliatory intent, and courts have applied the familiar <u>McDonnell Douglas</u> burden shifting approach used in employment discrimination cases in order to evaluate an employer's retaliatory intent. <u>Id.</u>; <u>see also</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

We do not think there is any doubt that the plaintiff easily satisfied the first two prongs, as it is essentially undisputed that she provided notice to her employer that she needed to take leave for a hysterectomy and convalescence, and in any event the standard under this prong is "not . . . formalistic or stringent." <u>Id.</u>  Thus, although the FMLA "does not require an employer to be clairvoyant," <u>id.</u> (quoting <u>Brenneman v. MedCentral Health Sys.</u>, 366 F.3d 412, 428 (6th Cir. 2004), this does not mean that an employee is required to provide every detail necessary for the employer to verify that the FMLA applies. <u>Id.</u>  Indeed, the regulations provide that where an employer "does not have sufficient information about the reason for the employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying". 29 C.F.R. § 825.303(a).  In any event, it is clear that even the defendants recognized that the plaintiff was invoking her rights

under the FMLA, and it is also evident that even if the defendants had some doubt about the veracity of the plaintiff's medical needs, they did nothing of any kind to make reasonable inquiry with the plaintiff or her doctor – who wrote to the defendants to explain how long she would be on leave to recover.  The defendants not only disbelieved this letter, they seemingly considered it to be evidence that the plaintiff was fabricating her need for time off.  The jury disagreed.

It is also undisputed that the plaintiff suffered an adverse employment action after taking FMLA leave.  The defendants have made a halfhearted argument that the plaintiff was simply laid off pursuant to her own request, but we have already explained above that this belated interpretation of the facts seems to collide with the defendants' contemporaneous representations that the plaintiff still had a job – at least until they terminated her employment.  We have little trouble concluding that the jury likely found that the plaintiff had satisfied this prong.

This leaves the question of whether the jury was required to find that the plaintiff's termination was causally related to her exercise of activity protected under the FMLA.  To find for the plaintiff, we would have to conclude that the jury was required to find, based upon the evidence it heard, that there was a "causative link . . . between her FMLA leave and her termination."  Id. at 307.  There is evidence that was sufficient to show that Gerald Fulkroad's decision to fire the plaintiff may have

been causally related to her exercise of FMLA leave.  For example, Mr. Fulkroad admitted that the letter he sent to the plaintiff on February 23, 2013, was sent in response to a letter he had received from Dr. Solomon, the plaintiff's surgeon, a letter that Mr. Fulkroad insisted he did not believe was legitimate.  (N.T. at 48:24-49:4.) The question is whether this evidence compelled the jury to find that the plaintiff's termination was causally related to the exercise of her FMLA rights.  Although this is somewhat close, given the paucity of evidence offered by the defendants, we do not find that the jury's verdict must be overturned with respect to the retaliation claim because it is not clear as a matter of law that the <u>only</u> conclusion that the jury could have made is that the plaintiff was terminated because of her FMLA activity.

Some of the evidence at trial suggested that Mr. Fulkroad was upset with Ms. Hosler for her failure to make payments on a vehicle that she had financed through the company, and also that he was upset that the plaintiff had been uncommunicative with him about a variety of matters.  There was not much evidence in this regard, but there was sufficient evidence that could have supported the jury concluding that Ms. Hosler had not carried her burden of demonstrating that her eventual termination resulted *because* she had exercised her FMLA rights, or that would have permitted the jury to find that other factors may have had a causative effect in hastening the end of Ms. Hosler's employment with the company.  Again, we are not charged with

13

reweighing the evidence, or in assessing the credibility of witnesses, or making factual judgments; we are simply to examine whether there was sufficient evidence to support the jury's conclusion, and we are constrained to find that the verdict in favor of the defendants on Ms. Hosler's retaliation claim must be upheld against this deferential standard of review, which favors the prevailing party following the jury's decision. Thus, the plaintiff's renewed motion for judgment as a matter of law will also be denied.

### B.     Plaintiff's Claims for Equitable Relief For FMLA, COBRA and ERISA Violations

Next, the plaintiff has brought claims for the imposition of equitable penalties against the defendants for violating her rights under the FMLA, ERISA and COBRA, by terminating her employment benefits unlawfully, and failing to provide her with required notice of her right to procure health insurance through her employer's plan after her employment had in fact ended. Alternatively, the plaintiff argues that she is entitled to be awarded an equitable damages remedy for the defendants' violations of the regulations governing the FMLA. She seeks either a $100 per diem penalty, or an equitable award of compensation for her medical bills.

ERISA and COBRA require that employers allow former employees the opportunity to continue health care coverage under the employer's plan (at their own

expense, not to exceed 102 percent of the employer's cost) if a qualifying event occurs. 29 U.S.C. § 1161. When a qualifying event occurs, such as the termination of employment, see 29 U.S.C. § 1163(2)), the employer is required to notify the plan administrator within 30 days of the date of the qualifying event. 29 U.S.C. § 1166(a)(2). After that, the administrator is required to notify any qualified beneficiary of the qualifying event within 14 days. 29 U.S.C. § 1166(a)(4).

Pursuant to 29 U.S.C. § 1163(2), the termination of a covered employee's employment constitutes a "qualifying event." The employer is required to give the a terminated employee notice of a qualifying event, such as termination. 29 U.S.C. § 1166(a)(4)(A). Applicable regulations articulate the interaction between COBRA and the FMLA. See 26 C.F.R. § 54.4980B-10. Under that regulation, "[t]he taking of leave under FMLA does not constitute a qualifying event." Id.

This is significant in this case. The plaintiff maintained throughout trial, and the jury evidently found, that she requested FMLA-qualifying leave in December 2012, in order to undergo a hysterectomy. In making this finding, the jury necessarily rejected the defendants' contention that what the plaintiff actually asked for was to be laid off – a story that the defendants pushed throughout the trial, but which was

found not to be persuasive.[1]  This is important because if the plaintiff was not laid off or terminated in December 2012, there was no "qualifying event" that would have been triggered under COBRA.  Furthermore, regulations clearly provide that an employer is required to maintain an employee's health benefits during qualified FMLA leave. 29 C.F.R. § 825.209.  Thus, the plaintiff argues that the COBRA notice that was indisputably mailed to her on or around January 8, 2013, was sent in error and was a nullity, since the defendants were by law required to maintain her health benefits during this time since she had requested, and was taking, FMLA leave.  Id.

The plaintiff argues that a "qualifying event" did not occur until either February 23, 2013, or March 12, 2013, when the plaintiff's employment actually

---

[1] The jury may well have reached this conclusion after finding that it conflicted with the plaintiff's testimony that when employees needed time off for matters like medical care, they requested something they called a "layoff," but which bore none of the hallmarks of what is typically thought of as a layoff. Instead, it was apparently particular nomenclature at Jay Fulkroad and Sons, used by employees to go out on leave, while retaining a job that awaited their return. The jury may also have believed the plaintiff that it would have made little sense for her to take leave for expensive and necessary surgery, but to ask that she be laid off during that time, and to have her benefits cut off, thereby leaving her with a significant medical bill to shoulder without the benefit of insurance.  And the jury may also have disbelieved Gerald Fulkroad's testimony that the plaintiff had simply been laid off, per her request, when he wrote to her in February to tell her that she was being deemed terminated as of February 4, 2013.  Very little, if any, evidence at trial supported the defendants' incoherent insistence that the plaintiff had been laid off from work, and her benefits appropriately terminated, at the end of December 2012, yet could still be terminated in February 2013.

concluded – however, after this time she did not receive notice of a qualifying event, or notice of her rights under COBRA to remain covered under her employer's policy at her own expense.  Thus, the plaintiff maintains that the only COBRA notice she ever received as a nullity, since she remained employed and no other qualifying event had occurred, and that the defendants failed in their obligation to provide her with required COBRA notice after they eventually terminated her employment.

The plaintiff argues that she should be awarded damages for this violation, and caselaw does support the view that "ERISA provides employees and beneficiaries with a private cause of action against plan administrators who fail to provide the required notifications under COBRA." Olick v. Kearney (In re Olick), 422 B.R. 507, 533 (Bankr. E.D. Pa. 2009).  Thus, 29 U.S.C. § 1129(c)(3) provides:

> Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person or who fails to meet the requirements of section 1082(d)(12)(E) of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(3).  The plaintiff argues that the defendants should be assessed a penalty for failing to send her the required COBRA notice after March 12, 2013, and assessed a fine equal to $100 for each day up through and including the date of

17

the jury's verdict in this case.  In this case, that amounts to more than $72,000.00, and even more if the Court were to award interest charges as well.  Recognizing that this is an area in which the Court is vested with discretion, and the Court finding no genuine or substantial basis for imposing such an onerous penalty simply for the defendants' failure to send required notices after the plaintiff's termination, we decline the plaintiff's offer to impose the per diem sanction she suggests.  We do not find any purpose served, must less an equitable purpose, by imposing a substantial per diem charge for a notice violation in this case.

The plaintiff also suggests that the Court would be empowered to require the defendants to pay the costs of the plaintiff's surgery, plus interest, for the ERISA and COBRA violations, but they provide little substantive authority for that kind of an award, although it is undisputed that the outstanding medical bills from surgery total $24,905.26.  (N.T., Ex. P-13.)   Plaintiff also requests interest in the amount of $1,780.73 on top of the unpaid principal bill.  Despite the lack of any specific citation to decisions where such awards have been issued, here we find in a far more equitable and principled basis for the plaintiff's request, since the evidence at trial strongly suggested that she was blind-sided by having her insurance coverage canceled, and because the erroneous cancellation of her insurance saddled her with an unexpected, and considerable debt for medical expenses.  It seems that a violation of this kind –

which dovetails with the FMLA violation that the jury found – would support an equitable award of damages, since fairness dictates that the defendants shoulder the cost of the plaintiff's surgery that would otherwise have been insured but for their unlawful cancellation of her policy.

While neither party has provided the Court with substantial legal authority in this area, such authority exists and supports the plaintiff's position that reimbursement of uninsured medical expenses caused by a COBRA violation may be ordered by the Court.  Thus, "[w]hen COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts tend to interpret ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to the medical expenses incurred minus any deductibles and premiums that the beneficiary would have had to pay for COBRA coverage.  See Sonnichsen v. Aries Marine Corp., 673 F.Supp.2d 466, 474 (W.D.La. 2009); Miles–Hickman v. David Powers Homes, Inc., 589 F.Supp.2d 849, 882 (S.D.Tex., 2008); Fisher v. Trutech, Inc., 2006 WL 3791977, at *3 (M.D.Ga.2006); Chenoweth v. Wal–Mart Stores, Inc., 159 F.Supp.2d 1032, 1042 (S.D.Ohio 2001); Hamilton v. Mecca, Inc., 930 F.Supp. 1540, 1555 n. 24 (S.D.Ga.1996)."  Gomez v. St. Vincent Health, Inc., No. 1:08-CV-153 SEB DML, 2010 WL 1854106, at *4 (S.D. Ind. May 6, 2010) aff'd, 649 F.3d 583 (7th Cir. 2011), as modified (Sept. 22, 2011).

These decisions, in turn, acknowledge what the statute and regulations say: The Court is vested with broad authority under ERISA to order relief that may be found appropriate for violation of the notice provisions established by COBRA, 29 U.S.C. § 1132(c)(3). We are mindful of this authority, particularly when reading the regulatory guidance behind the FMLA, which flatly provides that "[d]uring any FMLA leave, an employer must maintain the employee's coverage under any group health plan . . . on the same conditions as coverage would have been provided if the employee had been continuously employed during the entire leave period." 29 C.F.R. § 825.209(a). Additionally, the regulation further provides that "[t]he same group health plan benefits provided to an employee prior to taking FMLA leave must be maintained during the FMLA leave." Id. § 825.209(b). Furthermore, the FMLA itself provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute or the regulations. 29 U.S.C. § 2615(a)(1).

The law prohibiting this conduct could hardly be clearer, and yet that is precisely what occurred here: the plaintiff requested, and was approved for, FMLA qualifying leave, and the defendants acted in a manner that directly violated the FMLA, and ERISA, by terminating her health insurance at the end of December 2012, while she was out on leave and preparing for surgery and recovery. It is

entirely inequitable, and patently unfair, for the plaintiff to be forced to pay a substantial medical bill that would have been covered by insurance had the defendants not taken improper, unilateral steps to terminate her benefits, at precisely the time when the plaintiff was plainly in need of coverage. In consideration of the constellation of federal violations here, the manifest harm it caused to the plaintiff, and the authority that the Court has to order equitable relief for violations of just this kind, the Court will order the defendants to reimburse the plaintiff for the cost of her surgery, $24,905.26, together with interest in the amount of $1,780.73 through the date of the verdict.

### C.   **Liquidated Damages**

The plaintiff also seeks an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), which provides that a prevailing plaintiff shall be entitled to an additional amount of damages "equal to the sum of the amount" awarded by the jury for back pay. Plaintiff also seeks an award of interest on her back pay verdict, as well as interest on the award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii) and (iii).

The FMLA "provides that any employer who violates the Act shall be liable for an additional amount as liquidated damages equal to the sum of the lost wages and benefits award and any interest on that award." Diaz v. Saucon Valley Manor, Inc.,

21

Civ. A. No. 12-0433, 2013 WL 4564300, at *2 (E.D. Pa. Oct. 31, 2013); see also 28 U.S.C. § 2617.  A district court may exclude an award of liquidated damages, but only "if the employer proves its FMLA violation 'was in good faith' and it 'had reasonable grounds' for believing that it was not violating the FMLA." Id.  In order to establish the "good faith" requirement under the statute, "the employer must establish an honest intention to ascertain and follow the dictates of the statute." Id. (citing Bowyer v. Dish Network, No. 08-1496, 2010 WL 629830, at *7 (W.D. Pa. Feb. 19, 2010)).

The plaintiff has obtained a judgment in her favor, with the jury finding that the defendants violated the FMLA by interfering with her rights under the Act.  That verdict was amply supported by evidence which demonstrated Fulkroad's casual indifference to the defendants' FMLA obligations.  As the judgment winner here, the plaintiff need not present a showing that the defendants' violation was willful in order to be granted liquidated damages.  See Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991) ("[T]he employee need not establish an intentional violation of the Act to recover liquidated damages.") (involving an action under the Fair Labor Standards Act, which has a liquidated damages clause that substantially parallels the provision in the FMLA, and includes the same "safe harbor" provision that may avoid the imposition of liquidated damages if the employer demonstrates that the violation

22

was in good faith and that he had reasonable grounds for believing that his act was not a violation of the Act).   Rather, the FMLA has a presumption that liquidated damages "should be awarded as a matter of course, subject to the narrow exception in 28 U.S.C. § 2617(a)(1)(A)(iii)."  Persky v. Cendant Corp., 547 F. Supp. 2d 152, 164 (D. Conn. 2008); see also Cooper v. Fulton County, 458 F.3d 1282, 1287 (11th Cir. 2006) ("Liquidated damages are awarded presumptively to an employee when an employer violates the FMLA"); Thorson v. Gemini, Inc., 205 F.3d 370, 383 (8th Cir. 2000) (referring to the "mandatory call for liquidated damages"); Reich v. Southern New Eng. Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1979) ("[D]ouble damages are the norm, single damages the exception."); cf. Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729, 733 (7th Cir. 1998) ("[T]hat discretion [to disallow liquidated damages] must be exercised consistently with the strong presumption under the statute in favor of doubling.").

The law, therefore, is clear that liquidated damages should be awarded in this case unless wet find that Gerald Fulkroad presented persuasive evidence to explain why he honestly and reasonably questioned the validity of Dr. Solomon's letter explaining the plaintiff's need for additional recovery time, or how he held a good-faith belief that Ms. Hosler was abusing her rights under the FMLA.  Mr. Fulkroad made no such showing in this case, persuasive or otherwise.  Far from being a

23

reasonable good faith exercise, Fulkroad's conduct was unreasonable, unreasoning and arbitrary.   Indeed, Mr. Fulkroad admitted during his testimony that if Dr. Solomon's letter was, in fact, "genuine", the plaintiff would have been entitled to FMLA leave.  (N.T. at 47:1-9.)  If the letter were in fact legitimate, he agreed that she would have been entitled to leave until March 12, 2013.  (Id. at 47:25-48:3.)

Mr. Fulkroad's asserted bases for questioning the letter's veracity were entirely unconvincing.  During his testimony, at a point in time when he had no reason any longer to question the letter's validity, Mr. Fulkroad nevertheless continued to do so. (N.T. at 48:6-16.)  Why he persisted in doing so is not clear, and was not made clear by his testimony.  Mr. Fulkroad explained that he doubted the letter's provenance, but could not explain persuasively why he refused to believe this proof of Hosler's medical need.  Worse yet, after coming into possession of the letter, Mr. Fulkroad did nothing at all to inquire of Dr. Solomon about Ms. Hosler's condition, or Dr. Solomon's medical determination that she needed more time to convalesce.[2]  Instead, Mr. Fulkroad claimed that he doubted the letter's validity and provenance because, in his subjective judgment, it did not appear to have come from a doctor's office, and

---

[2] Mr. Fulkroad likewise never even called Ms. Hosler to inquire how she was recovering.  His first step towards communicating with her came with his letter in which he informed that she was deemed to have resigned on February 4, 2013.  (N.T. at 56:8-18.)

because he questioned the signature on the letter.  (Id. at 74:8-15.)  Why he would ask

these questions is itself a mystery, since he admitted that he had never seen an

exemplar of Dr. Solomon's signature.  (Id.)  Moreover, he never picked up the phone

to inquire of Dr. Solomon.  (Id. at 75:2-10.)

   Mr. Fulkroad's disinterest in this letter, and his uninformed opinion that the

letter somehow demonstrated that Ms. Hosler was lying to him or misrepresenting her

need for leave, is in keeping with his arbitrary, uninformed, and visceral response to

the plaintiff's genuine need for surgery – something that is not now, and really has

never been, in doubt.  Thus, when Ms. Hosler first approached Mr. Fulkroad about

the surgical procedure, he simply wrote "No" on her leave request.[3]  (Id. at 54:5-22.)

During his testimony, when asked why he initially rejected the plaintiff's request to

take leave for to have preadmission testing done prior to surgery, Mr. Fulkroad had

no answer.  He simply stated:  "It was probably in the spur of the moment.  I don't

know why I wrote no.  Just when I read it or looked at it and then I said no and then

I changed my mind and wrote okay."  (Id. at 54:25-55:2.)  When asked again why he

would have initially denied this request, Mr. Fulkroad had no answer.  (Id. at 55:10-

---

[3] The defendants' lack of sensitivity to their FMLA obligations is perhaps
also evidenced by the fact that in order to request leave of any kind, employees
were required to do so by filling out a "vacation request" form, regardless of the
type of leave they were seeking to take.  (N.T. at 50:22-51:2.)

12.)  Instead, Mr. Fulkroad enigmatically admitted that "[s]ometimes I just act out of reaction."  (Id. at 55:12.)  Whatever was meant by that, it hardly suggests good faith decision making that is based in fact, or made after reasonable inquiry.  Rather, it is a clear example of the arbitrary, and uninformed, way in which Mr. Fulkroad approached Ms. Hosler's request and her circumstances – an unreasonable and unreasoning approach that carried over into 2013, when Mr. Fulkroad informed Ms. Hosler that her employment was being terminated, despite having made no inquiry at all into her medical circumstances, and  despite having had plenty of reason and opportunity to do so.

Mr. Fulkroad's lack of any genuine, much less good faith, basis for initially denying the plaintiff's request and, later, terminating her employment while she was on FMLA qualifying leave was thrown into stark relief by the testimony of the plaintiff's surgeon and treating physician, Dr. Solomon.  Dr. Solomon testified credibly and competently about the plaintiff's need for surgery, and about the letter that he faxed to the defendants.  (N.T. at 83:10-114:3.)  The Court credits Dr. Solomon's testimony, and was surprised to learn that even after listening to the same testimony, Mr. Fulkroad took the stand again to tell the jury that he remained "on the fence" about whether the letter was legitimate.  (N.T. at 259:23-260:4.)  This was an extraordinary, and revealing, statement by Fulkroad.  In essence, Mr. Fulkroad

testified that even the sworn statement of Dr. Solomon made in his presence at trial was insufficient to fully persuade him of the legitimacy of this medical leave request. It is inherently unreasonable to require that an employee provide more than sworn testimony from her physician regarding the necessity of medical care to obtain FMLA leave. Yet, Mr. Fulkroad would apparently impose some obligation beyond testimony under oath from Hosler's treating doctor before he would be prepared to fully credit her claim of an illness requiring leave.

Mr. Fulkroad additionally testified, somewhat inexplicably, that it was his belief that he had no responsibility to know "when an employee needs time off for surgery, that the Family and Medical Leave Act would apply." (Id. at 262:10-21.) Although he initially refused to answer that question, upon being ordered by the Court to do so, he conceded that it was indeed his belief. (Id. at 263:12-15.) Testimony such as this thoroughly undermines Mr. Fulkroad's current position that he harbored a good-faith and reasonable belief that Ms. Hosler was misusing FMLA leave; the truth is, he did not believe he had an obligation even to make any inquiry of this employee's need for leave, or to follow up if he had questions. He simply reached an uninformed conclusion that was entirely unsupported by any articulable fact.

In short, in many ways the most compelling witness against Mr. Fulkroad on this score was Mr. Fulkroad himself, because his testimony highlighted and underscored the total lack of any reasonable good-faith basis to the defendants' interference with Ms. Hosler's rights under the FMLA.   Once Mr. Fulkroad completed his testimony, there simply was no credible evidence that the defendants had a reasonable, good-faith basis to make this judgment.   Rather, through his testimony Mr. Fulkroad confirmed the arbitrary, erroneous, subjective, and uninformed nature of the defendants' judgment that Ms. Hosler was misusing her rights under the FMLA.   This judgment now has significant consequences for the defendants, consequences that are compelled by statute.   Mindful of the statutory presumption in favor of doubling the damages awarded by the jury, an award of liquidated damages, equal to the jury's damages award of $33,260.00, will be assessed and awarded in this case.

In addition, the Court finds that it is appropriate to award annual interest on these liquidated damages at the IRS prime rate in effect at the time of the jury's award, which the plaintiff represented without contradiction stood at 3.25%.  See 29 U.S.C. § 2617(a)(1)(A)(ii) and (iii).   Our award of interest is consistent with the judgment reached by the Eastern District of Pennsylvania in Diaz, supra, where the Court awarded annual interest at the IRS prime rate on the liquidated damages award.

 Diaz v. Saucon Valley Manor, Inc., Civ. A. No. 12-0433, 2013 WL 4564300, at *8-*9 (E.D. Pa. Oct. 31, 2013).  In this case, that interest amount is equal to $2,176.71 on the back pay award, representing interest accrued from March 12, 2013, until the date of the verdict (735 days).  The same amount of interest will be awarded on the plaintiff's liquidated damages award.

   D.   **Front Pay**

   Finally, we turn to the plaintiff's motion requesting that the Court award her front pay as relief in addition to the jury's award of back pay, and the award of statutory liquidated damages.  The plaintiff represents that the availability of front pay damages as additional equitable relief is a matter that is somewhat unsettled within the Third Circuit, but notes that front pay has been recognized as appropriate in some cases by the Fourth, Fifth, Ninth, and Tenth Circuits, which have observed that "front pay is an equitable remedy that must be determined by the court, both as to the availability of the remedy and the amount of any award."   Traxler v. Multnomah Cnty., 596 F.3d 1007, 1011 (9th Cir. 2010) (collecting cases).

   The Third Circuit has, in fact, addressed this issue in the context of employment discrimination cases under Title VII and has apparently recognized that such relief may be available in FMLA cases as well, pursuant to that section of the statute allowing "equitable relief as may be appropriate, including employment,

reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).  In Brown v. Nutrition Management Services Co., 370 F. App'x 267 (3d Cir. 2010), the Third Circuit considered a cross-appeal by a prevailing plaintiff in an FMLA action where the plaintiff consented to have a jury determine front pay, but where the district court ultimately declined to instruct the jury on how to do so, and the jury declined to give an award because they believed that this issue was being committed to the court's discretion.  Id. at 273.  The appellate court noted that although the plaintiff had consented to have a jury determine the issue, "the law permits the District Court to make this determination."  Id. (citing Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 78 n.1 (3d Cir. 2009) (Title VII).  Accordingly, the Third Circuit remanded the matter to Judge Shapiro for further consideration of the equitable issue of whether front pay should have been awarded in the case.  Id.

On remand, Judge Shapiro found that "the purpose of front pay is to reestablish the victim's rightful place in the job market following unlawful conduct by the employer."  Brown v. Nutrition Mgmt. Servs. Co., Civ. A. No. 06-2034, 2010 WL 2902557, *2 (E.D. Pa. July 22, 2010).  Citing Donlin, the court found that "[f]ront pay is an alternative to the traditional equitable remedy of reinstatement, and is appropriate where there is irreparable animosity between the parties, or where a comparable position no longer exists."  Id. (citing Donlin, 581 F.3d at 86).  The

purpose of an award of front pay is "to reestablish the victim's rightful place in the job market following unlawful conduct by an employer." Id. (citing Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984)).  Such an award "should account for expected future damages caused by the wrongful conduct, but not 'guarantee every claimant . . . an annuity to age 70." Id. (quoting Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988)).  Judge Shapiro also observed that "[w]hen a former employee cannot be reinstated, front pay is typically appropriate." Id.

In this case, the defendants purportedly offered the plaintiff reinstatement in her former position after the trial concluded.  The plaintiff rejected this offer, and we have little trouble understanding why given the disintegration in their relationship, and the coarse treatment she received by her employer during a particularly vulnerable time in her life.  The defendants' offer of employment seems to have been made only after the jury handed down its verdict in this case, and seems to have been offered in the hopes of further mitigating the defendants' own damages.  We do not find that the plaintiff is foreclosed from pursuing her claim for front pay simply because the defendants belatedly extended an offer to bring her back onto the payroll two years after firing her after she had taken qualifying FMLA leave, and we conclude that reinstatement is simply not practicable here. See Hite v. Vermeer Mfg.

Co., 361 F. Supp. 2d 935, 945 (S.D. Iowa 2005) ("Plaintiff has not requested reinstatement. Indeed, the Court finds that reinstatement of plaintiff to her former position . . . would be impracticable. To expect plaintiff to return to work for an employer who violated her federal rights, and according to plaintiff, caused her serious medical condition to be substantially exacerbated, would not be reasonable."). Thus, we are compelled to consider whether an award of front pay is merited in this case.

The plaintiff seeks what she describes as a "modest" award of five years of front pay. Although we ultimately do find that the plaintiff should be entitled to a modest front-pay award, we are unable to find that the evidence in this case supports the modest award sought. The principal difficulty that the Court has with Ms. Hosler's request for five years of front pay is the relative lack of evidence that the plaintiff presented regarding her efforts to obtain new work, the kinds of jobs she applied for, her likely future income from the new work that she has found, the fact that Ms. Hosler's prior income with Jay Fulkroad and Sons appears to have fluctuated and was highly sensitive to economic conditions affecting the paving industry, and in general the paucity of proof on damages in the record.

In determining an appropriate front-pay award, courts will consider "an employee's duty to mitigate, the availability of employment opportunities, the period

within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine present value of future damages, and other factors that are pertinent on prospective damage awards." Arban v. West Publ'g Corp., 345 F.3d 390, 406 (6th Cir. 2003).  Other courts have considered factors such as the plaintiff's age, the length of her employment, the likelihood that she would have remained her position, the length of time reasonably necessary to secure suitable employment, among other factors.  See Prine v. Sioux City Comm'ty Sch. Dist., 95 F. Supp. 2d 1005 (N.D. Iowa 2000).  The plaintiff bears the burden of coming forward with sufficient evidence to allow the Court to calculate a front-pay award. See, e.g., Excel Corp. v. Bosley, 165 F.3d 635 (8th Cir. 1999); Barbour v. Merrill, 48 F.3d 1270, 1279 (D.C. Cir. 1995).  We are also mindful that calculating and awarding front pay necessarily requires the Court to engage in a degree of speculation, but find that any such speculation should be informed by evidence actually presented.  See Mathieu v. Gopher News Co., 273 F.3d 769, 782 (8th Cir. 2001) ("An award of front pay also is inherently speculative in length of time and when considering possible mitigation by reason of other employment.  It is based on probabilities rather than actualities.").

In this case, Ms. Hosler presented as an able employee; one who was hired as a general laborer but who, on her own initiative, learned the skills necessary to allow

her to work on a paving crew as a roller driver.  Ms. Hosler had worked for the defendant for six years when the defendants terminated her.  She was a younger employee, 32 years old, and presented herself as an able and hard worker.  She testified that she had no plans to leave the company, and that she enjoyed her job and found it satisfying.  (N.T. 146:8-17.)

The plaintiff testified that it took her four to five months to secure new employment, and that when she did so it was in a part-time position with a local municipality doing work similar to that she performed with Jay Fulkroad and Sons. She testified that she earned approximately $3,500.00 in 2014 in her new job.  (N.T. at 151:1-5.)  There was little additional evidence to show what other kinds of jobs the plaintiff may have sought after her employment with the defendants concluded, or any information from which the Court could determine the adequacy of her job search and her efforts to mitigate.  Instead, the plaintiff testified that she filled out some applications online in 2013, but did not keep copies and offered no information about what kind of work she was pursuing.  (N.T. 187:3-17.)  It is very difficult for the Court to judge the mitigation effort that was made in this case, and little attention was paid to this factor during the trial.  The record is largely bereft of evidence that could allow the Court to make a reasoned and informed judgment about what kinds of long-term employment opportunities may have been available to a worker like Ms. Hosler,

who presented as a very hard working, able and dependable employee. Indeed, that the plaintiff has only secured part-time work at very modest annual pay is somewhat surprising; but the reasons for this are not evident in the record.

The plaintiff very likely has many years of productive work life ahead of her, and while this factor suggests that a front-pay award is appropriate, it also suggests that the plaintiff is capable of finding more remunerative work than she has secured to date, thereby suggesting that any award of front pay should be limited. Therefore, we do find that the plaintiff should be compensated for some degree of front pay, but not for five years, since the evidence just does not support it, and because it strikes the Court as highly speculative.

In this case, the defendants – although arguing against the award of front pay – have made an alternative proposal that is both sensible and fair, and acknowledges the availability of front pay in cases such as this, while also ensuring that the award is not unduly speculative and even punitive. The defendants have urged the Court to limit any grant of front pay to "no more than 1 paving season, i.e., May 1 through October 31, 2015, as the time period during which Ms. Hosler can re-establish herself in the work force." (Doc. 74, at 7.) This amount is equal to $27,380.04, based upon Ms. Hosler's actual earnings during that time, which, when reduced by the $3,500.00 Ms. Hosler earned in her new employment, results in an award of $23,880.40. We

believe that this represents a fair and appropriate award of front pay, which compensates Ms. Hosler for a modest period of time during which she sought to re-establish herself in the workforce, and to pursue more remunerative work than she has obtained to date.   The plaintiff has asserted that a longer award is more appropriate, but we do not share that view on the evidence presented here, which we have fully considered.   Where awards of front pay are unduly speculative following an FMLA interference violation, courts have held that an award of front pay may be limited or even denied entirely.   Dollar v. Smithway Motor Xpress, Inc., 710 F.3d 798 (8th Cir. 2013).   We do not find that the denial of front pay is the just result, but we do find that limiting that front pay to a single year, as the defendants suggest, is warranted given Ms. Hosler's young age, her ability as a worker, and the questions that persist about the adequacy of her proof concerning her efforts to mitigate her damages in this case.

Accordingly, we will grant the plaintiff's motion for an award of front pay in the amount of $23,880.40 – the amount proposed as an alternative by the defendants.

## III.   ORDER

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. The parties' cross-motions for judgment as a matter of law (Docs. 66, 68.) are DENIED.   The jury's verdict with respect to the FMLA

interference violation and the award of $33,200.00 in back pay damages is sustained, as is the jury's finding of no liability with respect to the FMLA retaliation claim.

2.     The plaintiff shall be entitled to statutory interest on the back pay award in the amount of $2,176.71, bringing the total back pay award, with interest, to $35,436.71.

3.     The plaintiff's request for an equitable award based upon the defendants' violations of the FMLA, ERISA and COBRA is GRANTED, and the Court finds that the plaintiff's health insurance was terminated unlawfully while she was on FMLA qualifying leave. Because the plaintiff has represented without contradiction that she incurred medical bills in the amount of $24,905.26, with interest, solely as the result of the defendants' unlawful termination of her health benefits in December 2012, and because we find that equity dictates that these costs be borne by Jay Fulkroad and Sons, the defendants shall compensate the plaintiff an additional $24,905.26, representing the cost of Ms. Hosler's medical bills, together with interest in the amount of $1,780.73, for a total of $26,685.99.

4.    The plaintiff's motion for liquidated damages and interest (Doc. 60.) is GRANTED.  Pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii) and (iii), the plaintiff is awarded $33,200.00 in liquidated damages, and $2,176.71 in interest, for a total liquidated damages award of $35,436.71.5

5.    The plaintiff's motion for an award of front pay as an equitable remedy (Doc. 58.) is GRANTED in part.  The plaintiff shall be entitled to recover from the defendants front pay in the amount of $23,880.40.

6.    The total of the plaintiff's back pay, liquidated damages, equitable damages, front pay, and interest, amounts to $121,439.55.

The Court also notes that as the prevailing party in this litigation, the plaintiff is entitled by statute to recover reasonable attorneys' fees and costs.  29 U.S.C. § 2617(a)(3) ("The court in such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.").  The Court has deferred soliciting a motion from the plaintiff with respect to attorney's fees and costs in this case until after resolution of post-trial motions.  Those motions have now been ruled upon, and it is THEREFORE ORDERED THAT the plaintiff shall file a motion for attorney's fees and costs, together with a supporting brief, billing records, and records of costs, on or before **Monday, July 27, 2015**.  Further briefing on the motion shall

be filed in accordance with the schedule prescribed by the Local Rules 7.6, 7.7, and 7.8.

So ordered this 23d day of June 2015.


***/s/ Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge